E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER/MACK JENKINS
Assistant United States Attorneys
Chiefs, National Security/Criminal Divisions
LISA J. LINDHORST (Cal. Bar No. 305399)
COLIN S. SCOTT (Cal. Bar No. 318555)
Assistant United States Attorneys
Terrorism and Export Control/General Crimes Sections
     1500/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2130/3159
     Facsimile: (213) 894-2927/0241
     E-mail:    Lisa.Lindhorst@usdoj.gov
                colin.scott@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 5:23-cr-00161-SPG-1 |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S OPPOSED EX PARTE APPLICATION FOR ORDER CONTINUING TRIAL DATE (DKT. 36) |
| v. | |
| SIMRANDEEP SINGH, | Trial Date: April 22, 2024<br>Trial Time: 8:30 a.m.<br>Place: Courtroom of the Hon. Sherilyn Peace Garnett |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Lisa Lindhorst and Colin S. Scott, hereby files its opposition to defendant SIMRNADEEP SINGH's application for an order continuing trial date and finding excludable time.

//

//

This motion is based on the attached Memorandum of Points and Authorities, the Declaration of Colin S. Scott, all files and records in this case, and any further evidence and argument that may be presented at the hearing on this motion.

Dated: April 9, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER/MACK JENKINS
Assistant United States Attorneys
Chief, National Security/Criminal Divisions

\_\_\_\_\_/s/_____
LISA J. LINDHORST
COLIN S. SCOTT
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government remains ready for trial on April 22, 2024, and opposes defendant's request for a nearly six-month continuance of this two-day trial.

Defendant SIMRANDEEP SINGH ("defendant") was indicted on August 22, 2023, on a single count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). (Dkt. 1.)  His charge stems from an incident in which he admitted to renting, driving, and loading a U-Haul full of 506 kilograms of methamphetamine, but claims he did not know what was inside the bags at the time.

The trial is expected to last two days. Trial was originally scheduled for February 6, 2024, but on December 26, 2024, the Court granted the parties' joint request to continue the trial to the current trial date.  (Dkts. 14, 16, 19.)

On April 3, 2024, the Court held a status conference and both parties represented they were ready to proceed to trial.  (Dkt. 24.)

Yet on April 9, 2024, a day before the Court's motions deadline, defendant filed an Ex Parte Application requesting to continue the trial date nearly six months.  (Dkt. No. 36, the "Application"). The Application maintains that a continuance is appropriate because (1) defendant has been unable to find a rebuttal "drug trafficking" expert, (2) the government belatedly produced an extraction of defendant's phone to him, and (3) the government's late production of discovery from a related matter necessitates a continuance.

The government disagrees. As explained below, none of the issues identified by the defense justify such a lengthy delay.

## II. RELEVANT FACTS

### A. Parties Agree to a Pre-Trial Briefing Schedule

On April 3, 2024, the Court held a status conference to ascertain the parties' readiness for trial. (Dkt. No. 24.) At the hearing both parties represented that they were ready to proceed on the current date and the court advanced the trial by one day. (Id.) The Court also set the following pretrial deadlines with the input of the parties:

- April 5, 2024, at 12:00 p.m. - Discovery cut off, with the exception of Jencks and Henthorn discovery, and expert disclosure deadline.
- April 10, 2024, at 12:00 p.m. – Deadline for Motions in limine, Daubert motions, and jury instructions, and verdict form.
- April 12, 2024, at 12:00 p.m. – Deadline for responses to motions in limine and Daubert motions.

In accordance with the Court's standing order, the parties met and conferred on Friday, April 5, 2024, regarding potential motions in limine. (Scott Decl. at 2.)

On Friday, April 5, 2024, the Government sent proposed jury instructions to defense counsel. (Scott Decl. at 3). On Tuesday, April 9, 2024, the government sent a proposed verdict form to defense counsel. (Scott Decl. at 5).

### B. Recent Discovery Productions

In preparation for trial, and in response to defendant's request for additional discovery, the government has made certain discovery productions. Below is a summary of the productions made by the

4

government after the April 3, 2024 status conference but before the April 5, 2024 discovery cut-off:

| Date | Bates | Content |
|---|---|---|
| 4/04/2024 | USAO_000213 – USAO_000260 | 2 Surveillance Photos, 2 Simrandeep Phone Photos, 9 Bodyworn Camera Photos, Summary of Cell Data for Trial, Simrandeep Cellbrite PDF, 902(11) Certifications |
| 4/05/2024 | USAO_000261- USAO_000267 | July Surveillance Report and May Western Union Transfers (6 pages total) |

On Friday evening, April 5, 2024, after the discovery cut-off, and in response to a disclosure in the government's expert notice that stated that Special Agent Shaffer would "testify that defendant had saved in his contacts the number for a man named Maninder Singh Dhaliwal, a resident of Edmonton Canada, who is suspected of coordinating drug couriers in Los Angeles," defense counsel requested discovery on Maninder Singh Dhaliwal.  (Scott Decl. Exh. A. at 2.)

In response to this request, on Sunday evening April 7, 2024, the government offered to make available discovery on Maninder Singh Dhaliwal that connected Dhaliwal to the defendant and pointed defense counsel to the specific files that bore on this question.[1]  (Scott Decl. at 4.) Defense counsel agreed to the terms of the protective order on April 8, 2024, and the government immediately produced the relevant discovery.

---

[1] The government insisted that this discovery be made subject to the terms of a protective order given its sensitive nature.

Below is a summary of the single production made by the government after the April 5, 2024, discovery cut-off:

| Date | Bates | Content |
|---|---|---|
| 4/8/2024 | USAO_000001 – USAO_000229 | Sidhu Case File |

The vast majority of these files have no bearing on this case. The only potentially relevant portion is a single text message thread, USAO_000193 in the Sidhu production, which contains screenshots of text messages between Sidhu and the telephone number 780-245-6333, the same number found on the defendant's phone, which reference picking up "bricks" and other coded language that SA Shaffer would testify he understands to refer to drugs.  The majority of the discovery concerns the arrest of a single courier, in October 2022, months before the events that gave rise to this case.

### C. Expert Notice

Consistent with the Court's scheduling order, the government gave notice of its intent to call DEA Special Agent Jason Willock to testify regarding several topics that are exceedingly common to drug cases including: what methamphetamine looks like, how methamphetamine is distributed, what constitute personal versus possession quantities of methamphetamine, and common practices and trends used to traffic large quantities of drugs. (Scott Decl. Exh. A. at 2.) These are common topics that the government notices in almost every drug prosecution. The defense began looking for a drug expert only after the government noticed this expert.

### III. ARGUMENT

The decision to grant or deny a requested continuance lies within the broad discretion of the district court and will not be

6

disturbed on appeal absent clear abuse of that discretion." United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir. 1985); see also Houston v. Schomig, 533 F.3d 1079 (9th Cir. 2008) (finding that the trial court's denial of defendant's request to continue did not violate the Sixth Amendment). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). "The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id.

Here defendant's request does not stem from either counsels' unavailability and so defendant's Sixth Amendment Rights are not implicated. Instead, defense counsel argues that a continuance is necessary in order to ensure the testimony of an expert rebuttal witness and review newly produced discovery. Neither reason justifies such a lengthy continuance.

**A.  Expert Witness Unavailability**

Two weeks before trial defense counsel started their search for a rebuttal witness. "When a continuance is sought to obtain witnesses, the accused must show who they are, what their testimony will be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted, and due diligence has been used to obtain their attendance on the day set for trial." United States v. Hoyos, 573 F.2d 1111, 1114 (9th Cir. 1978)

Here, the defendant's lack of due diligence is the cause for the delay and so cuts against granting a continuance. While defense counsel maintains that they have contacted eight different potential

7

experts, they have failed to identify them or provide their conflicts. Defense counsel has also failed to explain how, in a single count drug case, they were unable to anticipate, before the government's notice, that some sort of drug expert would be needed.

Defendant has also failed to explain what the prejudice would be from the absence of their yet to be identified expert witness. In such circumstances, where it is unclear who the witness would be, the Ninth Circuit has upheld the denial of a continuance. See e.g. United States v. Hoyos, 573 F.2d 1111, 1114 (9th Cir.1978) (denial of continuance proper where, inter alia, moving party could not demonstrate that he could produce prospective witness even if continuance was granted); Powell v. United States, 420 F.2d at 801 (denial of continuance proper when, inter alia, moving party could not show that prospective witnesses could be located within a reasonable time).

### B. Discovery

Next, defense counsel maintains that a continuance is necessary to give counsel time to evaluate newly produced discovery. At first the government offered to address any purported prejudice from the newly disclosed discovery in order to maintain the current trial date. When that offer was rejected, the government offered a brief continuance to May 14, 2024, which was also rejected. Neither piece of discovery necessitates a continuance of five months and the government remains willing to address any purported prejudice to the defendant.

The first piece of discovery that defense points to is the forensic copy of defendant's own phone that was produced by PDF on April 4, 2024, before the status conference, and again on April 5,

2024. Defendant has not articulated what probative value this phone will have to his defense to possessing 1,300 pounds of methamphetamine in a rented U-Haul.[2] More importantly, despite knowing that the full forensic image was forthcoming, defense counsel represented that the parties would be ready for trial on April 22, 2024, at the April 5th status conference after they had possession of the PDF copy of the CelleBrite file.

Next, defendant points to a limited set of information produced after the discovery cut-off related to a phone number found on defendant's phone. This discovery is limited, consisting of approximately less than 30 pages of investigative reports and a single text message thread. In order to minimize prejudice to the defendant and to maintain the current trial schedule the government is willing to forgo mentioning the presence of this phone number on the defendant's phone in its case in chief which should alleviate any purported prejudice.

### C. Inconvenience to the Administration of Justice

The Ninth Circuit also analyzes inconvenience to the court and the United States when determining whether a continuance should have been granted. United States v. Tham, 960 F.2d 1391, 1396 (9th Cir. 1992) (affirming conviction where trial court denied defendant's

---

[2] Although the phone download is large, it contains information dating as far back as 2018. The government extracted the entire phone with defendant's consent. The isolated incident at issue in this trial occurred in July of 2023. Further, defense counsel argues that because defendant's cellphone download contains messages and audio files in Punjabi, the defense team needs three weeks and the help of Punjabi translators to sift through this information before trial. [Cite]. But the defendant presumably can translate his own messages from Punjabi to English.

9

request for a continuance, noting "a trial court is not obligated to accommodate a defendant's strategic aspirations"). The United States has allocated significant resources based on the current trial schedule and coordinated the travel of several law enforcement and lay witnesses.

Above all, however, multiple continuances of a simple, two-day trial frustrates the orderly progression of cases. "The right of a speedy trial is necessarily relative" and "does not preclude the rights of public justice." United States v. Ewell, 383 U.S. 116, 120 (1966) (citing Beavers v. Haubert, 198 U.S. 77, 87 (1905)). Even though a defendant may waive his speedy trial rights, his decision to waive those rights and request to delay a two-day trial must be balanced against the public's interest in a speedy trial. Here, a continuance will only delay final trial preparations and may result in the loss of important witnesses. The manager of the Logan's Roadhouse, who opened the methamphetamine bags, is moving out of state later this year. (Scott Decl. at 6.) As a result, justice in this case will be delayed, and that delay will then hamper the progression of other cases.

The United States also has an obligation to protect the public by attempting to secure convictions, and seeking sentences, that incapacitate international drug traffickers. The United States has a compelling interest in adjudicating this case, and if Defendant is convicted, seeking a sentence that will be sufficient to deter crime and protect the public. *See* 18 U.S.C. § 3553(a).

**IV.   CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's request or in the alternative grant a short continuance to May 14, 2024.

**DECLARATION OF COLIN S. SCOTT**

I, Colin S. Scott, declare as follows:

1. I am an Assistant United States Attorney with the United States Attorney's Office for the Central District of California, I represent the United States in this matter.

2. On April 5, 2024, the parties met and conferred, by teleconference, regarding potential motion in limine. During that telephone conversation, defense counsel requested additional information on Maninder Singh Dhaliwal.

3. On April 5, 2024, I sent defense counsel a copy of the Government's proposed jury instructions for this case.

4. On April 7, 2024, I emailed defense counsel a summary of the available discovery on Maninder Singh Dhaliwal and explained that the government would immediately make the underlying documents available upon defendant's agreement to abide by the terms of a draft protective order. On April 8, 2024, Rebecca Abel, responded by email and informed me that they agreed to abide by the terms of the protective order I had sent.

5. On April 9, I sent defense counsel a copy of the Government's proposed verdict form for this case.

6. I understand that Stephen David Charles, the manager of the Logan Roadhouse, and a key witness for the government, will be moving out of California in several months.

7. Attached hereto as Exhibit A is a true and correct copy of the Government's Expert Notice.

# Exhibit A



**United States Department of Justice**

**United States Attorney's Office**
**Central District of California**

*Lisa J. Lindhorst / Colin Scott*  *1200 United States Courthouse*
*Phone:  (213) 894-1667*  *312 North Spring Street*
*E-mail:  Lisa.Lindhorst@usdoj.gov/Colin.Scott@usdoj.gov*  *Los Angeles, California 90012*

April 5, 2024

**VIA EMAIL**

Jonathan Aminoff
Rebecca Abel
Deputy Federal Public Defenders
Office of the Federal Public Defender, Central District of California

    Re:  <u>United States v. Simrandeep Singh</u>, No. 2:23-CR-161-SPG
          Drug Trafficking Expert Testimony Disclosure

Dear Mr. Aminoff and Ms. Abel:

    Pursuant to Federal Rule of Criminal Procedure ("FRCP") 16(a)(1)(G), the government hereby discloses its intent to elicit expert testimony pursuant to Federal Rules of Evidence 702, 703, and 705.  We are agreeing to stipulate to the Chemist's testimony and therefore are not including any expert notice regarding the weight and purity of the methamphetamine recovered in this case.

**Cellphone Data and Cell Site Location Data**

    The Government intends to call Special Agent ("SA") Trenton Shaffer, from the Drug Enforcement Administration ("DEA"), to testify in the field of cellular phone technology and cellphone data extractions, as well as phone location analysis. SA Shaffer has been a special agent with the DEA for four years, as outlined in his CV, which is attached. He has been trained by the United States Air Force Geospatial Intelligence School and through the DEA's special agent training academy. Throughout his four years with the DEA, SA Shaffer has extracted and analyzed cellphone data, call detail records ("CDRs"), and he has used that data to examine the contents of the phone for evidence in his cases and he has used cell site data to the phone and to determine the approximate location of target phones retroactively using call detail records ("CDRs") and cellular tower data.

    The government anticipates that, based on his training and experience, SA Shaffer may testify at trial regarding how to obtain a cellphone extraction through 'Cellebrite,' and then how to examine the contents of a cellphone through that data extraction process. In this case, SA Shaffer may testify specifically about obtaining the data from the cellphone that defendant Singh left behind in the U-Haul. He may testify about how he extracted that data from that phone and about his personal examination of the phone's contents – specifically, defendant's contacts. We

Mr. Aminoff and Ms. Abel
RE:  U.S. v. Singh, CR 23-161-SPG
April 5, 2024
Page 2

expect that he will testify that defendant had saved in his contacts the number for a man named Maninder Singh Dhaliwal, a resident of Edmonton Canada, who is suspected of coordinating drug couriers in Los Angeles. Defendant saved this contact under the title "Mani Bai CANADA."

SA Shaffer may also testify at trial regarding defendant's cellphone location data. He may testify generally about how cellphones use cell towers to transmit or receive phone calls. He may testify that cellphone companies maintain databases that generate CDRs, which document the date, time, duration, number called, and calling number for a customer's phone calls. Additionally, he may explain that CDRs capture the cell tower that served the cellphone for that phone call. Used in conjunction, the CDRs and a list of cell tower locations illustrates an approximate location of the subject cell phone at the time of the call. As to this case specifically, SA Shaffer will testify about his analysis of the CDRs for defendant's cellphone, 840-207-1533, and associated cellular tower records, including the approximate location of that cellphone between the evening of July 25, 2023, when defendant arrived in Los Angeles, through to the early morning hours of July 27, 2023, when he returned to New York. SA Shaffer has prepared a PowerPoint presentation containing maps that depict his location analysis throughout that two-day period. The government may seek to introduce the PowerPoint presentation as an exhibit at trial, which the agent will use to help explain his analysis and conclusions. A DRAFT copy of the PowerPoint was produced to you on April 4, 2024 (USAO_000235-USAO_000259). We will produce a final version before the pretrial conference.

Pursuant to Rule 16(a)(1)(G)(v), SA Shaffer approves this disclosure regarding his expected testimony.

**<u>Drug Trafficking</u>**

The government intends to call DEA Special Agent Jason Willock. Through his training and experience, SA Willock has become familiar with the manner in which controlled substances are distributed, including within and by drug trafficking organizations, the methods and amounts of payment for such controlled substances, and the various methods used by drug traffickers to avoid detection by law enforcement.  SA Willock's training, background, and work experience are detailed in his curriculum vitae, previously produced on April 2, 2024 (USAO_000207-USAO_000209).

The government anticipates that, based on his training and experience, SA Willock's testimony will include (but not be limited to) the following:

- Characteristics of methamphetamine, including, among other things, its classification as a Schedule II controlled substance under the Controlled Substances Act and its physical appearance.
- The methamphetamine supply chain as of 2023, including, among other things:
    - Most methamphetamine in the United States was (and still is) manufactured outside the United States.

Mr. Aminoff and Ms. Abel
RE:  U.S. v. Singh, CR 23-161-SPG
April 5, 2024
Page 3

- - A significant amount methamphetamine was (and still is) subsequently imported into the United States through the U.S.-Mexico border into border states, including California.
  - Cities in Southern California like Los Angeles served (and still serve) as a transshipment hub for methamphetamine throughout the United States and internationally.
- The general structure of drug trafficking operations ("DTOs") who distribute controlled substances within this methamphetamine supply chain, including, among other things:
  - The hierarchical nature of DTOs, with different individuals playing different roles.
  - The role of a drug courier or runner as the individual who transports controlled substances for the DTO.  Typically, the courier operates at the direction of a "dispatcher" or local manager.  The courier may not know the identity of the dispatcher, and the DTO structure is designed to limit the amount of information any one courier may know.
  - The necessity and importance of couriers in a DTO's operation.
- The approximate market prices and wholesale prices of methamphetamine during the time period described in the indictment; and the approximate dollar value of 1,300 pounds of methamphetamine in Los Angeles in July 2023, and as well as that re-sale price in other areas.
- Distinctions between amounts of drugs possessed for personal use versus amounts possessed for distribution, including that kilogram quantities of methamphetamine are possessed for distribution, not personal use.
- The various methods DTOs use to transport controlled substances across long distances;
- Terminology and communication styles and cellphone practices of drug traffickers when conducting drug transactions.
- Special Agent Willock may also describe other trends and anecdotes from prior investigations that he has been directly involved in, all of which inform his analysis in this case.

SA Willock will base these opinions on his training and experience investigating drug trafficking.  SA Willock has 15 years of experience as a federal special agent, all of which has been focused on drug and gang crimes, as well as gang-based drug trafficking.   SA Willock's expertise includes all aspects of the importation into and/or manufacture in the United States, transportation, and sale of controlled substances.  SA Willock has developed an expertise in drug and gang crimes through both his investigative work and his extensive training, including training on narcotics investigations and communications of drug traffickers.

Mr. Aminoff and Ms. Abel
RE:  U.S. v. Singh, CR 23-161-SPG
April 5, 2024
Page 4

In addition, SA Willock has learned about the drug trafficking trade from his work on the ground - including reviewing thousands of intercepted communications between drug dealers, speaking to drug dealers and users after drug seizures and enforcement actions, debriefing confidential informants, as well as speaking to people (drug dealers, drug users, and witnesses) at search warrant executions.  Throughout his career, he has participated in over 25 investigations into the distribution of illicit substances, including those involving methamphetamine, cocaine, heroin and fentanyl; debriefed and interviewed hundreds of drug violators and cooperating sources of information about all aspects of drug trafficking, including individuals who have engaged in multi-kilogram operations and those who have engaged in street sales of cocaine, methamphetamine, heroin, counterfeit pills, and pharmaceuticals. He has listened to wiretap conversations and reviewed transcripts where drug traffickers discuss various aspects of drug trafficking in their own words to include drug prices, code words, and methods of distribution. He has authored and executed numerous search warrants on the phones and/or premises of drug traffickers, couriers, and drug users, and have subsequently reviewed hundreds of text message conversations related to the transportation, sale, storage, and use of drugs.

SA Willock will also base his opinions on his review of discovery in this case, specifically photographs and surveillance videos of defendant on July 26, 2023, and the photos of the narcotics found in the U-Haul defendant was driving, and the DEA drug analysis report.

Special Agent Willock has not authored any publications in the previous ten years.  Fed. R. Crim. P. 16(a)(1)(G)(iii), nor has he testified as an expert before.

Pursuant to Rule 16(a)(1)(G)(v), Special Agent Willock approves this disclosure regarding his expected testimony.


---

The government believes that the information contained in this notice is sufficient to meet the obligations of FRCP Rule 16.  If you feel otherwise, please let me know.  Please note that the government's expert notice requirements under FRCP Rule 16 apply only to its case-in-chief.  If the government is apprised of any defense that defendant wishes to advance at trial, I will advise you of the government's intent to call any rebuttal experts.

The government reserves the right to offer additional testimony by SA Willock or SA Shaffer and for either Agent to amend or adjust his opinions and bases therefore, based on information perceived by or made known to him before or during trial.  The government also reserves the right to file supplemental notices and/or summaries before or during trial, as necessary.  Additionally, scheduling conflicts, should they occur, may require the government to notice additional experts.

Mr. Aminoff and Ms. Abel
RE:  U.S. v. Singh, CR 23-161-SPG
April 5, 2024
Page 5

Pursuant to FRCP Rule 16(b)(1)(C), the government hereby requests reciprocal disclosure of testimony defendant intends to use under Rule(s) 702, 703, and/or 705 of the Federal Rules of Evidence.  The government also requests all reciprocal discovery to which it is entitled under FRCP Rules 16(b) and 26.2.

**The government also requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress.**

The enclosed materials, and any future discovery provided to you that may exceed the scope of discovery mandated by the Rules, federal statute or relevant case law, are provided voluntarily and solely as a matter of discretion.  By producing such materials to you, the government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations.

Please let me know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

Lisa J. Lindhorst
Colin Scott
Assistant United States Attorneys
Terrorism and Expert Crimes & General Crimes Sections

Enclosure:
- SA Trenton Shaffer's *curriculum vitae*