CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: jonathan_aminoff@fd.org)
REBECCA ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
SIMRANDEEP SINGH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:23-cr-00161-SPG-1 |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS OR FOR ALTERNATIVE REMEDIES DUE TO SPOLIATION** |
| v. | |
| SIMRANDEEP SINGH, | |
| Defendant. | **Final Pretrial Conference: September 4, 2024** |
| | **Jury Trial: September 16, 2024** |

TO PLAINTIFF UNITED STATES OF AMERICA AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 4, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant Simrandeep Singh, by and through his undersigned attorneys of record, will move to dismiss the indictment for spoliation, or in the alternative, to suppress secondary evidence, and issue an adverse jury instruction.

This motion is based upon the attached Memorandum of Points and Authorities, the appended exhibits, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 31, 2024         By  /s/ Rebecca M. Abel
                             JONATHAN C. AMINOFF
                             REBECCA ABEL
                             Deputy Federal Public Defenders
                             Attorney for SIMRANDEEP SINGH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Simrandeep Singh is accused in a single count indictment of possession with the intent to distribute 506 kg of methamphetamine in violation of 21 U.S.C. §§841(a)(1). Dkt. 1.  On July 26, 2023, the methamphetamine was found inside of a U-Haul van.  It was broken into individual units, each of which were wrapped in different plastic packaging materials, and then placed inside 12 closed black duffel bags of varying brands.  Ex. A.

The government destroyed all the drugs, all the packaging materials, and all the duffel bags.  None of those items are available for inspection by the defense or by the jury at trial.  All that remains as evidence of this crucial evidence are 6 photographs, none of which capture the contents of the duffel bags or the details of the packaging of the drugs.[1]  Ex. B.

Most concerning, this evidence was destroyed on January 17, 2024.  *See* Ex. C at 2-34.  That was after the DEA interviewed Mr. Singh on November 1, 2023.  Ex. D.  At that interview, Mr. Sing told the agents that he did not know drugs were inside the duffel bags, and he "believed" the bags contained "truck parts."  Id. at 10.  Thus, when the government destroyed the evidence in this case, they knew Mr. Singh denied knowledge of the duffle bags' contents and the reasonableness of his belief would be central to his defense at trial. Without this crucial evidence, Mr. Singh is foreclosed from proving that he never touched the contents of the bags or the drugs.

Because the government destroyed the central evidence in the case, Mr. Singh's due process rights have been violated.  Dismissal is appropriate.  In the alternative,

---

[1] Normally, the defense would also be in possession of body-camera footage capturing the seizure of the drugs.  Although the report from the Fontana Police Department officers who initially reported to the scene makes plain that body camera footage was captured and saved, Ex. A, the government claims it was all destroyed. Ex. E.  Therefore, there is no evidence capturing the drugs or their packaging at or near the time of seizure, other than 6 photos.

1

suppression of the drug evidence and packaging are warranted. At the very least, an adverse jury instruction would be an apt sanction.

## II. LEGAL STANDARD

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). In addition to the government's obligations to disclose favorable or impeachment evidence under *Brady* and *Giglio*, *Trombetta* held that to protect a defendant's right to present a complete defense, when the government fails to preserve evidence, due process is violated if the "unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (citing *Trombetta*, 467 U.S. at 489) (internal quotations omitted). Unavailable evidence that the government fails to preserve is categorized in two ways: (1) material exculpatory evidence and (2) potentially useful evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

The Supreme Court has said that "when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012). "Potentially useful evidence," on the other hand, is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015) (citing *Youngblood*, 488 U.S. at 57). The government's failure to preserve evidence that was potentially useful—as opposed to materially exculpatory—must have been done in bad faith in order to violate due process. *See Youngblood*, 488 U.S. at 57-58. To

establish a due process violation, a defendant must also show a "lack of reasonably available comparable evidence." *Zaragoza-Moreira*, 780 F.3d at 981.

A wide array of sanctions can appropriately be imposed for failure to preserve either material exculpatory evidence or potentially useful evidence, up to and including dismissal of the indictment. *See id.* at 982 (reversing and instructing district court to dismiss indictment for government's failure to preserve surveillance footage that was potentially useful); *Cooper*, 983 F.2d at 933 (affirming district court's dismissal of the indictment for failure to preserve potentially useful evidence).

### III. ARGUMENT

**A.   The government's destruction of the central evidence in this case violated Mr. Singh's Due Process rights.**

    **1.   The drugs and packaging were material and exculpatory.**

"The Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). "[A] due process violation occurs whenever such evidence is withheld." *Illinois v. Fisher*, 540 U.S. 544, 547 (2004).  Where the exculpatory value of such evidence is apparent before the evidence was destroyed, dismissal is warranted regardless of bad faith. *California v. Trombetta*, 467 U.S. 479, 489 (1984).

The duffle bags and packaging of the drugs are both material and exculpatory. The photographs indicate that at least some of the methamphetamine was packaged in multiple layers of cellophane, making it impossible to identify the contents by feel. Moreover, the duffle bags appear to be opaque, making it impossible to see the contents inside.  The packaging of the drugs is material to Mr. Singh's defense that he was unaware of the contents of the bags, and it was exculpatory because it would establish his inability to identify the contents unless the bags and/or packaging were opened, and there is no evidence that was done.

3

Showing the packaging to the jury at trial would help prove that Mr. Singh was reasonable in his belief that the bags contained innocuous contents, namely, truck parts. At the time the packaging was destroyed, the government was aware of Mr. Singh's defense, yet it destroyed the central evidence in this case before trial. The government's conduct warrants sanction.

### 2. At minimum, the drugs and packaging are potentially useful and Mr. Singh cannot obtain comparable evidence by other means.

At the very least, the drugs and their packaging are potentially useful to Mr. Singh. Like in *Youngblood*, the packaging is at a minimum "potentially useful," because "it could have been subject to tests, the results of which might have exonerated the defendant." *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994). The absence of Mr. Singh's fingerprints or DNA on the cellophane packaging would have demonstrated he had never opened the bags or touched the contents. Mr. Singh was denied the opportunity to offer this evidence. *See United States v. Westerdahl*, 727 F. Supp. 1364, 1368 (D. Or. 1989) (government's failure to preserve getaway car denied defendant the opportunity to present a complete defense, since it was central to the issue of whether the defendant was the driver and more and better blood samples taken from the car might have suggested an alternative suspect).

Moreover, the physical duffel bag containing the actual drugs in their original packaging are crucial to show the jury that Mr. Singh would not have been able to identify the illicit contents merely by moving them from a car into the U-Haul. None of the photographs clearly show the packaging of the drugs. Some of the drugs appear to be packaged in Ziploc bags, while other quantities are wrapped in clear cellophane, and others in black material. Ex. B. None of the photographs capture the duffle bags clearly, as the photos are distant, and several types of bags were used. *Id.* The government did not preserve any body-camera footage of the seizure, which would have shown the bags as they were moved and the packaging on the date of the offense.

Ex. E. There is no reasonably comparable evidence to the actual drugs, their original packaging, and the duffel bags inside which they were found.

### 3. The government acted in bad faith by destroying the evidence.

Bad faith is established because the drugs and their packaging were destroyed after the government was on notice of Mr. Singh's defense. *See Youngblood*, 488 U.S. at 56 ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."). The DEA interviewed Mr. Singh on November 1, 2023, and Mr. Singh expressly stated that he did not know what was inside the duffel bags. Ex. D. Two months later, the government destroyed the evidence in this case. Ex. C. Because the agents were aware of the importance of the drug packaging to Mr. Singh's defense, the government acted in bad faith in destroying it. *See United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (holding that destruction of equipment was in bad faith because "the equipment's value as potentially exculpatory was repeatedly suggested to government agents" before they allowed its destruction); *Zaragoza-Moreira*, 780 F.3d at 980-81 (finding bad faith where video footage was destroyed, even where government argued failure to preserve it was "nothing more than an oversight").

## B. Dismissal, suppression, or an adverse jury instruction are warranted.

Since the destruction of this central evidence permanently deprives Mr. Singh of due process, dismissal is the appropriate remedy. *See Bohl*, 25 F.3d at 914 (describing the factors to consider for determining whether dismissal or suppression is the appropriate remedy as "the centrality of the evidence at trial, the reliability of the secondary evidence, and the effect such destruction had on the defendant's ability to present a defense, must be considered in the calculus," citing *Cooper*, 983 F.2d at 933).

Even if a court finds that evidence was destroyed "under circumstances that do not violate a defendant's constitutional rights, the court may still impose sanctions including suppression of secondary evidence." *United States v. Flyer*, 633 F.3d 911,

916 (9th Cir. 2011). "In so doing, the court must balance the quality of the Government's conduct and the degree of prejudice to the accused." *Id.*

Among other factors, this balancing test asks courts to weigh the government's conduct by considering "whether the evidence was lost or destroyed while in its custody, whether the Government acted in disregard for the interests of the accused, [and] whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification." *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (cleaned up).

In evaluating prejudice to the accused, courts consider "the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence." *Id.* at 1173-74.

### 1. The government's conduct was subpar.

The government's conduct here was poor. Each of the factors described in *Sivilla* is present here.

The evidence was lost or destroyed in the government's custody, either when the Fontana Police Department failed to preserve it after handling it at the scene, or when the DEA destroyed it after interviewing Mr. Singh. The government acted in disregard for the interests of Mr. Singh, since it did not preserve the central, potentially useful evidence necessary to proving Mr. Singh's knowledge of the criminal activity, did not meaningfully photograph or describe that evidence, and did not preserve any video footage captured by the body-worn cameras worn and saved by several officers on the day of the incident. At the very least, the officers were negligent in failing to adhere to

1  established and reasonable standards of care for police functions, since a reasonable
2  police officer would not have allowed for the destruction of the container of illegal
3  narcotics and would have known that the packaging could have been tested for
4  fingerprints or DNA.  Moreover, Fontana Police Department failed to adhere to its
5  department's BWC policies in destroying or failing to preserve the footage captured by
6  its officers.  *See* Fontana Police Dept., Body Worn Computer, § 451.12,
7  https://www.fontanaca.gov/DocumentCenter/View/19403/Body-Worn-Camera-
8  Policy?bidId=; Cal. Penal Code § 832.18(b)(5)(B).  For the reasons stated above, the
9  government acted in bad faith and had no reasonable explanation for destruction or
10 failure to preserve key evidence in this case.

11        **2.    Prejudice to Mr. Singh is high.**

12        The *Sivilla* factors also reveal that the prejudice to Mr. Singh is high.

13        The packaging around the drugs is central to the case here, since the government
14 must prove beyond a reasonable doubt that Mr. Singh knew that drugs were in the
15 duffel bags.  There is no secondary or substitute evidence to examine since no BWC
16 footage was preserved and only 6 poor photographs capture exist, none of which offer a
17 clear view of the bags or the packaging.  More importantly, an in-person inspection of
18 the bags and packaging are necessary to understand their opacity, weight, feel, and size.
19 None of which can be recreated now.  Factual inferences or other demonstrations that
20 could be made if the evidence had been preserved have been lost. For example, Mr.
21 Singh cannot test the packaging for DNA or fingerprints.

22        The jury here would likely afford greater weight to this unreliable evidence than
23 it deserves on this factual record.  The government has indicated that due to its own
24 failure to preserve the evidence, it intends to ask the Court to allow it to show the jury
25 "replica" bags, "replica" drugs, and "replica" packaging.  The government's intent
26 speaks to the acknowledged importance of this crucial, now destroyed evidence.
27 However, because the evidence was destroyed and no reliable documentation of it
28 exists, the government's attempt to "recreate" it will cause undue prejudice to Mr.

Singh. The government will have the opportunity to present its "recreated" version of the facts, but the defense will not. The government should not be able to benefit from its own destruction of the central evidence in the case.

The balance of the *Sivilla* factors supports suppression of the drug evidence and packaging from the case. *Sivilla*, 714 F.3d at 1173. At a minimum, the government should be prohibited from offering its "replica" evidence.

Even if the Court finds an absence of bad faith, the defense requests that the Court issue an adverse jury instruction. Such an instruction would be appropriate and does not require a showing of bad faith. *See id.* (remanding for remedial jury instruction where defense was that defendant was a "blind mule" and did not know that drugs were contained in a Jeep, but government sold car before the defense could assess whether there were secret compartments in Jeep); *United States v. John*, 683 F. App'x 589, 593 (9th Cir. 2017) ("A defendant may be entitled to an adverse inference instruction even if the government did not act in bad faith, but only when the quality of the government's conduct was poor and the prejudice to the defendant was significant."); *see also* Ninth Circuit Criminal Jury Instruction § 3.19 (Lost or Destroyed Evidence). An adverse instruction would help to ensure that the jury does not place undue weight on the packaging of the drugs, since the defense never had an opportunity to examine the bags or wrapping, test them, or show them to the jury so that the jurors could make an independent assessment of whether a reasonable person would know what is inside.

### IV. CONCLUSION

The destruction of the drugs and their packaging directly resulted from the government's bad faith conduct and is a violation of Mr. Singh's due process rights. For these reasons and those stated above, the Court should dismiss the indictment. In the alternative, the Court should suppress the drug and packaging evidence, bar the government from offering any "replicas" at trial, and provide an adverse jury instruction.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CUAUHTEMOC ORTEGA<br>Federal Public Defender |
| DATED: July 31, 2024 | By  */s/ Rebecca M. Abel*<br>JONATHAN C. AMINOFF<br>REBECCA ABEL<br>Deputy Federal Public Defenders<br>Attorney for SIMRANDEEP SINGH |

9